KENT L. BROWN AND JOANNA BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 30801-88
United States Tax Court
T.C. Memo 1991-260; 1991 Tax Ct. Memo LEXIS 308; 61 T.C.M. (CCH) 2849; T.C.M. (RIA) 91260; June 10, 1991, Filed *308 Decision will be entered under Rule 155. R. La Mar Bishop, for the petitioners. Richard W. Kennedy, for the respondent. SWIFT, Judge. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in petitioners' joint Federal income taxes and additions to tax and increased interest for 1982, 1983, and 1984, as follows:  Additions to Tax or Interest, Secs. [1]
Year
Deficiency
6651(a)(1)
6653(a)(1)
6653(a)(2)
6661
6621(c)
1982
$ 13,698  $ 725 $ 685 *
$ 3,425
**
1983
17,169
--
858
*
4,292
**
1984
15,918
--
796
*
3,980
**
After settlement of all other issues, the only issue for decision is whether amounts received by petitioners constituted payments *309 in connection with a covenant not to compete or payments in connection with the sale of stock. FINDINGS OF FACT Essentially all of the facts have been stipulated and are so found. Petitioners resided in Sparks, Nevada, at the time they filed their petition in this case. For a number of years prior to the end of October of 1981, petitioners owned a minority interest in Cate Equipment Co., Inc. (Cate Equipment), apparently a Nevada or Utah corporation engaged in the sale and leasing of construction and mining equipment and in providing supplies to industrial companies. Petitioner Kent L. Brown also was a director, officer, and salesman of Cate Equipment. On October 30, 1981, petitioners entered into a written agreement to sell their stock in Cate Equipment to a number of individuals and companies (the purchasers). The total stated selling price for their stock was $ 500,000, to be paid to petitioners in installments over 7 years with simple interest at 9 percent per year. Simultaneously with entering into the agreement to sell their stock in Cate Equipment, petitioners entered into another separate written agreement with the purchasers entitled "Agreement Not To Compete." Under *310 this agreement, petitioners agreed not to compete against Cate Equipment for 5 years after selling their stock in and after terminating their relationship with Cate Equipment. The relevant portion of this agreement provides as follows: WHEREAS, KENT L. BROWN, has heretofore been involved as a salesman, an officer and director of CATE EQUIPMENT COMPANY and has been fully knowledgeable with the company's business, operation, territories, customers, etc. and, WHEREAS, PURCHASERS desire to be protected and held harmless from SELLERS competing against CATE EQUIPMENT COMPANY for a period of 5 years by reason of SELLERS terminating their relationship with CATE EQUIPMENT COMPANY; NOW THEREFORE, In consideration of the mutual promises of the parties hereto and for the sums of money as hereinafter set forth, the undersigned hereby agrees as follows: 1. PURCHASERS have agreed under a Stock Purchase Agreement dated the 30th day of October, 1981 to buy out SELLERS 55 shares of CATE EQUIPMENT COMPANY stock owned and held by them, which agreement is referred to herein. 2. SELLERS herewith agree that from the date of execution of this agreement and for a period of at least 5 years thereafter *311 that they will not in any way, either directly or indirectly compete against CATE EQUIPMENT COMPANY and/or any of its subsidiaries involving the Construction Machinery business, the Mining Machinery business, and/or the Industrial supplies business within the sales territory now being actively followed by CATE EQUIPMENT COMPANY and/or any of its subsidiaries as may be defined by: (a) contracts existent between CATE and/or its subsidiaries and various manufacturers, and (b) also the sales territory now being actively followed by CATE-CARBON EQUIPMENT COMPANY.
The agreement goes on to provide that as separate consideration for petitioners' agreement not to compete, Cate Equipment will pay petitioners an additional $ 31,860 each year for 5 years (a total of $ 159,300). Petitioners were paid the $ 31,860 due under this agreement in 1982, 1983, and 1984. OPINION Amounts paid to a seller of a business for a covenant not to compete constitute ordinary income to the seller and generally are deductible by the purchaser. Amounts paid to a seller of a business for the goodwill of a business generally constitute capital gain income to the seller and nondeductible capital expenditures *312 to the purchasers. , vacating and remanding . Petitioners contend that, in substance, the agreement entitled "Agreement Not To Compete" constituted an agreement for the sale of goodwill associated with Cate Equipment, not a covenant not to compete, and therefore that the $ 31,860 paid each year to petitioners under that agreement constituted consideration for the sale of goodwill and should be treated by petitioners as capital gain income. Respondent contends that the agreement in question constituted a covenant by petitioners not to compete and therefore that the $ 31,860 paid to petitioners each year under the agreement should be treated as ordinary income. For purposes of this case, we assume that the form of the agreement between the parties does not necessarily bind the characterization thereof for Federal income tax purposes. . Cf. ; , *313 affg. a Memorandum Opinion of this Court. The sale of petitioners' stock in Cate Equipment is reflected in a written agreement, separate and distinct from the written agreement entitled "Agreement Not To Compete." The language of the latter document clearly reflects that its import and purpose was to obligate petitioners not to compete with the various business activities of Cate Equipment for a period of 5 years after selling their stock in and after terminating their relationship with Cate Equipment. Many of petitioners' factual allegations are completely unsupported by and contrary to the evidence. Specifically, petitioners allege that, independently of both agreements, after the sale of their stock they never intended to compete with Cate Equipment, and therefore the covenant not to compete should be ignored. Petitioners also allege that, contrary to their original intentions, soon after the sale petitioner Kent L. Brown in fact became an independent salesman and competed with Cate Equipment in violation of the terms of the covenant not to compete, but that by continuing to pay petitioners the $ 31,860 per year the purchasers of petitioners' stock disregarded any rights they *314 had under the covenant not to compete. In sum, petitioners allege (without any factual support in the record) that all parties to the sale of petitioners' stock in Cate Equipment disregarded the covenant not to compete and that therefore the Court should do likewise. Petitioners allege further that certain language in the first "whereas" clause of the agreement reflecting the covenant not to compete (namely, that petitioner "Kent L. Brown * * * has been fully knowledgeable with the company's business, operation, territories, customers, etc.") indicates that the payments to petitioners constituted payments for goodwill associated with petitioners' stock interest in Cate Equipment. We disagree. Rather than goodwill, such language suggests to us the precise reason a covenant not to compete was entered into. In , the Ninth Circuit affirmed per curiam the holding of the trial court in that case to the effect that the payments in question constituted payments for a covenant not to compete, not payments for goodwill. After noting that the payments were described in the agreement *315 between the contracting parties as payments for a covenant not to compete, the Ninth Circuit made the following pertinent statement: A witness's testimony * * * in direct conflict with the provisions of a written instrument is of little weight. * * * [, quoting from the trial court's findings reported at .]
This statement is particularly apropos to our evaluation of the evidence in the instant case wherein petitioners, based on completely unsupported factual allegations, are asking us to disregard the express terms of the agreement reflecting the covenant not to compete. The evidence before us is overwhelming that the $ 31,860 paid to petitioners each year constituted amounts paid for a covenant not to compete. We so hold. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect for the years in issue.↩
*. 50 percent of the interest due on the portion of the underpayment attributable to negligence.↩
**. 120 percent of the interest due on the total amount of the deficiency.↩